**BRIDGEPORT FIREMEN'S SICK AND DEATH BENEFIT ASSOCIATION, a Connecticut corporation, Plaintiff-Appellee,**

v.

**DESERET FEDERAL SAVINGS AND LOAN ASSOCIATION, Defendant-Appellant.**

No. 82–1679

United States Court of Appeals, Tenth Circuit.

May 22, 1984.

Edward M. Garrett and Michael A. Katz, Garrett & Sturdy, Salt Lake City, Utah, for defendant-appellant.

Barbara K. Polich, Parsons, Behle & Latimer, Salt Lake City, Utah (Val R. Antczak, Parsons, Behle & Latimer, Salt Lake City, Utah, with her on brief), for plaintiff-appellee.

Before BARRETT, DOYLE and SEYMOUR, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

This case has to do with responsibility for loss of $90,000 as a result of an officer of Bridgeport obtaining the $90,000 by representing that it was a valid loan transaction. Bridgeport brought this conversion action seeking the return of the $100,000 certificate of deposit from defendant Deseret. The loan was obtained from the defendant as a result of presenting a certificate of deposit for $100,000 belonging to Bridgeport as collateral for the $90,000 loan. It developed that this transaction was completely unauthorized by Bridgeport. The $90,000 was apparently converted by the officer who applied for the loan on behalf of Bridgeport.

The issue in this case is whether the loss is to be assumed by plaintiff or defendant.

In September, 1976, plaintiff obtained a ten year certificate of deposit in the amount of $100,000 from defendant Deseret. The transaction was conducted by a broker. Plaintiff submitted a signature card to defendant, which card authorized four officers to transact business relating to the certificate of deposit. Two of the officers' signatures were required for each transaction. Bernard Packo (Treasurer) and William Egan (Secretary) were two of the four signatories to the card.

The account lay dormant for about two years. In 1978, a man purporting to be Bernard Packo appeared at defendant's place of business. He represented that plaintiff wished to borrow $90,000 and use the certificate of deposit as collateral for the loan. Mr. Packo also presented the following documents to effectuate the transaction:

1) The certificate of deposit.

2) A letter on plaintiff's letterhead dated May 15, 1978 and ostensibly signed by Mr. Packo and Mr. Egan indicating that plaintiff had elected new officers includ-

ing a Mr. Coffin as Secretary. This was a forged letter and the new officers, with the exception of Mr. Packo, were fictitious.

3) A letter signed by the fictitious Mr. Coffin authorizing Mr. Packo to borrow the $90,000.

4) A new signature card with the signatures of Mr. Packo and the three fictitious officers. This card also contained a resolution authorizing any two of the officers to transact business.

5) A promissory note signed by the fictitious Mr. Coffin.

Mr. Packo then signed the promissory note. These documents were accepted by defendant after it compared the signatures of Egan and Packo on the letter with their signatures on the original signature cards. Defendant then gave Mr. Packo a check for $90,000 payable to plaintiff. While it is unclear what actually happened to the money, it is evident that Bridgeport never received the $90,000. Mr. Packo thus misappropriated the entire amount. Defendant has retained the certificate of deposit and refuses to return it to plaintiff.

Plaintiff filed this diversity action seeking to recover the certificate of deposit from Deseret Savings & Loan. Plaintiff alleged three causes of action. The first sought a declaration that the loan and related pledge of its certificate of deposit were without authority and were, accordingly, void. The second cause of action alleged that the defendant had converted plaintiff's certificate of deposit. The final cause of action alleged defendant's negligence in the transaction.

Defendant moved for summary judgment. This motion was heard by a magistrate who, after making findings, recommended that the motion be denied. Based on the magistrate's findings, the plaintiff moved for summary judgment on its first and second causes of action. The motion was granted by the trial court. The trial court concluded that a bank is liable when it accepts a new signature card without independently establishing that the original signatories authorized the change. In addi-

tion, the trial court based its judgment on the fact that Packo's signature alone was insufficient to authorize the transaction and that the forged signatures could create no authority pursuant to Utah law. Defendant then filed this appeal.

*Defendant-appellant contends:*

That the trial court erred in denying its motion for summary judgment and in granting plaintiff's motion. In support of these contentions, defendant argues:

1) Defendant is protected from liability by the Utah Fiduciaries Act.

2) Defendant did not breach its contract with plaintiff because the transaction with Mr. Packo was authorized by virtue of the fact that the documents contained the requisite two signatures and/or by Packo's indicia of authority.

3) Defendant is a holder in due course and thus has a complete defense.

4) There is no evidence as to what happened to the $90,000 check which was payable to plaintiff and carried a restrictive endorsement limiting further negotiation.

*The plaintiff argues:*

1) The Utah Fiduciary Act is inapplicable to a loan transaction. Even if the Act applies to loans, it applies only to authorized transactions and this transaction was not authorized.

2) Defendant breached its contract with plaintiff because Mr. Packo had no actual or apparent authority to conduct the transaction.

3) Defendant is not a holder in due course and, in any event, took the instrument subject to plaintiff's claims.

In reviewing this summary judgment, this court must determine whether any genuine issue of material fact exists and whether the substantive law was correctly applied. *Western Casualty & Surety Company v. National Union Fire Insurance Company*, 677 F.2d 789, 791 (10th Cir.1982).

The court below found that Packo was not authorized to conduct the loan transaction and found the bank liable. This court agrees in part although the question has been analyzed somewhat differently. It appears that this case should be governed by the provisions of Utah's version of the Uniform Commercial Code, Utah Stat.Ann. § 70A–3–101, et seq. ("UCC"), which deals with commercial paper.

■ The applicability of the UCC to this transaction was not specifically argued by the parties. However, the parties have implicitly assumed applicability of the Code. The defendant has also argued that it is a holder in due course. A holder in due course is a holder of a *negotiable instrument* (3–302, 3–102). Other requirements are necessary in order to be a holder in due course. There must be a negotiable instrument. The signature card, although perhaps not a negotiable instrument itself [1] is not to be viewed in isolation. The forged signature card was presented so that Packo could negotiate the promissory note and receive a check for $90,000. These are negotiable instruments governed by Article III of the UCC. (Utah Stat.Ann. 70A–3–104).

Under the provisions of 3–401, a person is not liable on an instrument unless his or her signature appears on it. In addition, an "unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it...." (3–404). Therefore, this court must first determine whether the signatures on the promissory note were authorized, and then, even if they were unauthorized, whether plaintiff is precluded from asserting the lack of authority.

As defined in the comments to 3–404, an unauthorized signature includes both a forgery and an agent's signature which exceeds his actual or apparent authority.

■ Here, the promissory note contains a signature of Packo and of a Mr. Coffin. Packo was only authorized to transact business relating to the certificate of deposit when his signature appeared in conjunction with the signature of another officer. By the terms of both the original and the forged replacement signature cards, Packo's signature alone was insufficient. We need not decide, however, whether under Utah law Packo's signature alone would constitute an unauthorized signature within the meaning of the UCC [2] because the note also bore the signature of the fictitious Mr. Coffin. This alone is a forgery.

There are no cases dealing with the question of the liability of a bank when it pays out money based on an instrument which contains the requisite number of signatures but one is a forgery and one is valid, but the valid signature, by itself, is plainly insufficient according to the terms of the plaintiff's contract with the bank.

Defendant argues, in essence, that these signatures were authorized based on the replacement signature card and the other indicia of authority presented by Packo to effectuate the transaction. While this may indicate negligence, it does not make a forged signature a valid one. The forged signature on the promissory note is a forged maker's or drawer's signature and liability must be determined accordingly.[3]

---

**1.** We do not say that the signature card alone would be governed by Article III of the UCC. We do note that while there are no cases that address this question, at least one other court has found that withdrawal slips can fall within the provisions of Article III. *Maddox v. First Westroads Bank,* 199 Neb. 81, 256 N.W.2d 647 (1977).

**2.** The authorities which deal with adequacy of one signature when two are required, are not applicable here.

**3.** The UCC distinguishes between a forged maker's or drawer's signature and a forged indorsement. *Perini Corp. v. First Nat. Bank of Habersham County,* 553 F.2d 398 (5th Cir.1977). This distinction is critical in allocating the loss between the parties. Because this case is viewed as involving a forged maker's signature, 70A–3–405 has no application. In cases falling within 3–405 (the "fictitious payee" or "padded payroll" rule) the drawer or maker has actually signed the instrument and has made a maker's or drawer's contract within the meaning of 3–413. The misfeasance occurs later when an employee

When a bank pays an item on a forged maker's or drawer's signature, payment is not to the maker's or drawer's order and "violates the drawee bank's strict duty to charge its customer's account only for properly payable items." See § 4–401(1) *Perini* at 405.

> The Code's analysis of forged check liability not only begins with the drawee, however; it also generally ends there. The drawee's payment of a forged check is final in favor of a holder in due course or one who has relied on the payment in good faith. § 3–418. This final payment rule codifies and attempts to clarify the rule of Price v. Neal, 3 Burr. 1354 (K.B. 1742), 'under which a drawee who accepts or pays an instrument on which the signature of the drawer is forged is bound on his acceptance and cannot recover back his payment.'

Here, the defendant, in essence, made a payment out of plaintiff's account which was not properly payable (4–401) because of the forged signature on the promissory note (3–404). Defendant did this by giving Packo a check for $90,000 and retaining the certificate of deposit. This is somewhat different from the more usual case of paying out funds on a forged check but the principle and result is the same. By keeping plaintiff's certificate of deposit, defendant has, in effect, charged plaintiff's account with the amount of the misappropriated funds.

A finding that the defendant Bank is liable for the loss may seem somewhat harsh in this situation. However, this allocation of the loss is not one made by this court but rather one that is mandated by the provisions of the UCC. Section 3–404 indicates that a forged signature is an unauthorized one. In allocating the loss to a drawee or payor of a forged instrument, the UCC does not distinguish between excellent forgeries and poor ones, or between ingenious schemes and careless ones.

The UCC, however, does provide that the negligence of a person may preclude him or her from asserting the lack of authority against certain parties. (3–406) Whether there is negligence here cannot be determined since there were joint motions for summary judgments. Both the lack of evidence of negligence and the failure to assert the presence of negligence under the UCC precludes our recognizing this as a factor in the case.

The Utah Fiduciaries Act (Utah Code Ann. § 22–1–1 *et seq.*) protects third parties when they conduct certain transactions with fiduciaries. The trial court rejected defendant's contention that the Act shielded them from liability. He based this ruling on a finding that Packo did not have the authority required by the Act and the Act therefore did not apply.

The Act specifies eight situations in which a third party can be protected in its dealings with fiduciaries. None of the sections specifically covers loan transactions although the plain language of § 22–1–2 indicates that it applies to loans. This section provides:

> A person who in good faith pays or transfers to a fiduciary any money or other property which the fiduciary as such is authorized to receive, is not responsible for the proper application thereof by the fiduciary * * *. (Emphasis added.)

The question before this court is whether the trial court erred in holding, as a matter of law, that Packo was not authorized to receive the money and that, therefore, the Act did not apply so as to shield defendant from liability. On appeal, defendant argues that Packo was apparently authorized to conduct the transaction. Moreover, defendant asserts that this is a question of fact, that the parties dispute the facts and

---

of the maker then endorses the instrument intending that the payee have no interest in the instrument. § 3–405(c) also does not apply to protect the bank on the check it issued to Packo, but payable to plaintiff. Although the bank's signature as drawer was valid, 3–405(c) applies when an "agent or employee of the maker or drawer has supplied him with the name of the payee intending the latter to have no such interest." It is evident that Packo was neither agent or employee of the maker nor drawer, here, defendant Deseret.

that it was inappropriate for the court to decide the question as a matter of law in a motion for summary judgment.

Although the Act does not define "authority," it apparently includes actual, implied or apparent authority. Chiefly at issue here is whether Packo had apparent authority. Apparent authority exists " '[W]here a person has created such an appearance of things that it causes a third party reasonably and prudently to believe that a second party has the power to act on behalf of the first person * * *.' " *Walker Bank & Trust Co. v. Jones,* 672 P.2d 73, 75, quoting *Wynn v. McMahon Ford Co.,* 414 S.W.2d 330, 336 (Mo.App.1967).

This court agrees with defendant that the question of apparent authority is usually considered a question of fact. *Cavic v. Grand Bahama Development Co.,* 701 F.2d 879 (11th Cir.1983). If the facts in this case were such that reasonable persons could not differ as to the conclusion, the question of apparent authority could be determined as a matter of law. In this case, however, different reasonable inferences could be drawn on the question of Packo's apparent authority. The parties dispute whether Egan's signature on the letter dated May 15, indicating the election of new officers, was actually signed by Egan on a piece of blank letterhead and later filled in by Packo, or whether Packo forged the entire letter, including Egan's signature. In addition, Packo presented the certificate of deposit to defendant. Apparently, Bridgeport allowed Packo to have access to this document. Packo was a signatory to the original signature card. These facts *could* have, collectively, created apparent authority in Packo. This court does not decide whether the facts did create such authority. The only determination we make is that these facts could lead a jury to reasonably infer that Packo did have apparent authority.

Accordingly, it was error for the trial court to decide that, as a matter of law, Packo was not authorized and that the Act did not apply.

The cause is remanded to the district court for further proceedings consistent with the foregoing opinion.