The **BRIDGEPORT FIREMEN'S SICK AND DEATH BENEFIT ASSOCIATION,** a Connecticut corporation, Plaintiff,

v.

**DESERET FEDERAL SAVINGS AND LOAN ASSOCIATION, Defendant.**

Civ. No. C81–105G.

United States District Court,
D. Utah, C.D.

April 17, 1986.

Barbara K. Polich, Byron W. Milstead, Salt Lake City, Utah, for plaintiff.

Michael A. Katz, Salt Lake City, Utah, for defendant.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

This case came on regularly for trial on remand from the Tenth Circuit Court of Appeals on April 2, 1986, concluding on April 3, 1986. Plaintiff was represented by Barbara K. Polich and Byron W. Milstead. Defendant was represented by Michael A. Katz. Witnesses were called and exhibits presented, after which counsel argued the case at length. The Court rendered an oral ruling in favor of plaintiff, finding that irregularities in the transaction had created a duty of inquiry in defendant as to the apparent authority of a supposed fiduciary which prevented application of the Utah Uniform Fiduciaries Act in this case. The Court stated that the oral findings and opinion would be supplemented by subsequent written findings and memorandum decision, which is set forth herein.

## FACTUAL BACKGROUND

On September 28, 1976, plaintiff obtained a 10-year Certificate of Deposit for $100,000 from defendant, a federally chartered savings and loan association in Salt Lake City, Utah. Plaintiff is a Connecticut corporation organized and made up of firemen in Bridgeport, Connecticut. The transaction was handled by a broker, so no personal acquaintances between the parties came into being. The original signature card which was submitted by plaintiff upon request of Deseret Federal authorized any two of four signatories to make withdrawals or pledge the certificate on behalf of Bridgeport Firemen's. The signatories were: Bernard C. Packo, Treasurer; William H. Egan, Secretary; Norman L. Southard, Jr., Trustee; and Donald Perry, Trustee.

The account was dormant except for interest accrual entries until May 17, 1978.

On that date, a man presented himself to the defendant's Teller and identified himself as Bernard C. Packo, the person named in the original signature card as the Treasurer of the Association. He represented that plaintiff wished to borrow $90,000 and use the Certificate of Deposit as collateral for the loan. The alleged Mr. Packo presented the following documents to effectuate the transaction:

(a) The Certificate of Deposit.

(b) A letter on Association letterhead dated May 15, 1978, containing the purported signature of Mr. Packo, who was identified as Treasurer, and the purported signature of William H. Egan, who was identified as Secretary. The letter stated that on March 29, 1978, the Association had met and elected new officers, replacing all prior officers except Bernard C. Packo who was elected for a second term. Thomas L. Coffin was named as the new Secretary of the Association, and the term of all of the officers was for the period April 1, 1978 to March 31, 1980;

(c) A letter, also dated May 15, 1978, purportedly signed by Thomas L. Coffin as Secretary of the Association, authorizing Mr. Packo to borrow the $90,000 in accordance with a resolution "passed by the membership May 8, 1978";

(d) A new signature card containing the purported signatures of Mr. Packo, Treasurer; Thomas L. Coffin, Secretary; James P. Wynet, Trustee; and Sigmund S. Sipos, Trustee. This card purported to authorize any two of the signatories to transact business for plaintiff;

(e) A promissory note purportedly signed by Thomas L. Coffin.

The documents were accepted by defendant after checking the signatures of Packo and Egan as against the original signature card, and a check for $90,000 made payable to plaintiff was given to the alleged Mr. Packo. It was later learned that the transaction was not specifically authorized by plaintiff, that the persons named on the new signature card except Mr. Packo were

fictitious persons and that plaintiff received none of the loan proceeds. Plaintiff requested the return of the Certificate of Deposit, but defendant refused to deliver it on the ground that it was pledged as security for the loan.

On the aforementioned facts, summary judgment for plaintiff was originally granted in 1982 by the trial court, Chief Judge Aldon J. Anderson, holding that defendant breached its contract with plaintiff by transacting business which impacted on the Certificate of Deposit without requiring two signatures as called for in the original signature card. The trial court stated: "Even if plaintiff's Treasurer carried an apparent authority to so act, since it took two signatures from the original card to release funds on deposit, ... his presence or signature alone could not change the signature requirements." The Tenth Circuit reversed, holding that it was error to rule as a matter of law that Mr. Packo was not authorized to receive the proceeds of the loan and that the Utah Fiduciaries Act did not apply to the transaction. The cause was remanded for further proceedings and factual determinations as to Mr. Packo's apparent authority. *Bridgeport Firemen's Sick and Death Benefit Association v. Deseret Federal Savings and Loan Association*, 735 F.2d 383 (10th Cir.1984). The Court said:

> If the facts in this case were such that reasonable persons could not differ as to the conclusion, the question of apparent authority could be determined as a matter of law. In this case, however, different reasonable inferences could be drawn on the question of Packo's apparent authority. 735 F.2d at 388.

## PROCEEDINGS ON REMAND—FINDINGS

At the trial on remand, the Teller of plaintiff, Jerry Sparks, testified that he did not ask for or require any form of identification from the person who claimed to be Bernard Packo, whether by picture identification such as a driver's license, or otherwise. The Teller's explanation of the transaction according to a statement he furnished shortly after it occurred was as follows:

> To the best of my recollection, a Mr. Bernard Packo entered our main office of Deseret Federal Savings and Loan on May 17, 1978 at approximately 11:00. He brought with him a Certificate of Savings and explained to me that he was President or Secretary of the Fireman's Insurance Fund of the State of Conn. He also brought with him a new signiture (sic) card and said that they had had an election of officers because of the death of one of the old officers. He explained to me that he had to pick up his sick mother from his brother's in Denver and since he was that close to Salt Lake City, he thought he would come over and take care of this business in person. He told me that when a fireman's life is lost they (the State ins. fund) gives each widow a certain amount of money. He then explained that he needed $90,000.00 for this purpose and asked if he could take out a passbook loan against this account. I think he brought the withdrawal slip with him. I processed the loan and had it cosigned by an officer of the company and gave it to him. He thanked me and left.

The alleged Mr. Packo signed the promissory note in front of the Teller, but thereafter the only thing the defendant did to check out the transaction was to compare signatures on the documents presented with signatures on the original signature card. No inquiry was made or attempt to verify any of the assertions made to the Teller by the alleged Mr. Packo. The Certificate of Deposit which was presented had an address label pasted over the original address label. The new label was thusly addressed: "Bridgeport Firemen's Sick and Death Benefit Association; Attn Bernard Packo, Treas.; 299 Maplewood Ave.; Bridgeport, Connecticut 06604." The original address label gave the address of Bridgeport Firemen's Sick and Death Benefit Association as 30 Congress St., Bridgeport, Conn. No prior notification of any change of address had been given by plain-

tiff to defendant. William H. Egan, an Assistant Fire Department Chief of plaintiff, and one of the signatories on the original signature card, testified at the trial that the address of plaintiff had never changed and that the Maplewood address was fictitious. Mr. Egan further testified that he had not signed the letter dated May 15, 1978, which had been presented to defendant. He also denied that he had ever signed a blank page, although he agreed that the signature on the May 15, 1978, letter did look like his. He testified that the letter contained false representations that persons had been elected and authorized to represent plaintiff, and that the persons were unknown to him, were not members of the Association, and apparently were wholly fictitious persons, including Thomas L. Coffin. He said that no such election had taken place, that no loan was ever approved or resolution passed authorizing Bernard C. Packo to borrow on the Certificate of Deposit, and that plaintiff had never received any of the loan proceeds. He did verify that pictures introduced into evidence and identified by the Teller as the man who claimed to be Mr. Packo, were in fact pictures of Mr. Bernard Packo.

A report of a handwriting expert presented by defendant set forth the opinion that the signature on the May 15, 1978, letter was that of Mr. Egan, but also set forth the opinion that the signatures of the alleged Bernard Packo on the documents presented in connection with the loan transaction "appear to be forged" and have "indications of being a simulated forgery." Both parties called experts knowledgeable in savings and loan custom and practice. Defendant's witness testified that it would not be unusual to approve a loan transaction secured by savings certificate by checking signatures without requiring more identification or further inquiry, but admitted that the two letters dated May 15, 1978, which showed that two different persons were signing as Secretary, might well have caused her concern enough to place a call to plaintiff to check out the facts. Plaintiff's witness testified that under pru-

dent practice two independent forms of identification, including a picture should have been required in order to establish identity. He further testified that the transaction was unusual, that there were several irregularities on the face of the documents presented which should have caused defendant immediately to make further inquiry, and that in the absence of satisfactory explanation the transaction should have been rejected. He noted that the May 15, 1978 letter which contained the signature of William H. Egan as "Secretary" was so signed at a date after Mr. Egan supposedly had been replaced by another secretary. Beyond that, however, he testified that the letter was wholly insufficient to provide notification of names of persons who supposedly had been substituted as authorized signatories for those named on the original signature card, and that under prudent practice all four original signatories would have to sign off to justify accepting a replacement signature card. As to the change of address, his testimony was that at least two of the original signatories should have provided written notification to justify the change, and that the mere pasting of a seal over the original address on the Certificate of Deposit under the circumstances presented was not sufficient to justify a change of address.

The Court finds from all of the facts and circumstances that the transaction was irregular and that there were signs and indications of irregularity which should have been apparent to defendant, including irregularity as to the apparent authority of the alleged Mr. Packo. The person was clothed with indications of authority, including possession of the Certificate of Deposit and letters on true letterheads of the plaintiff to which the corporate seal was affixed. However, the transaction urged by the presumed Mr. Packo also bore indications of irregularity. Assuming that Mr. Egan signed the letter dated May 15, 1978, or was tricked into signing a blank page from which the letter was constructed, there was an irregularity in connection

with his alleged signature. The certification by Mr. Packo and Mr. Egan as "Secretary" on the May 15, 1978, letter, a date when the document itself indicated that he was not the secretary, was the sole documentation and authorization upon which a change and substitution of names of authorized signatories was based. Whether valid or not, the Egan signature couldn't have been operative on that date as one of the two authorized signatures required to withdraw funds or to consummate a loan transaction. Neither could it have been operative to authorize substitution of other names for the original signatories on the original signature card. The attempt to use it as such constituted a per se irregularity in any event. The Court finds from the application of common sense, as well as the facts and circumstances of this case, including the expert testimony, that more was required to effect substitution of authorized signatories than the sole signatures of Mr. Packo and a *past* secretary. The industry experts of both parties seemed to agree, and the Court finds, that under prudent standards of practice applicable to financial institutions in the circumstances of this case, inquiry should have been made as to accuracy of representations of the past secretary. According to the May 15 letter, Mr. Egan had been replaced by that date, so defendant was on notice that he was not authorized at that time to bind the Association in any way. There is no assurance in the May 15 letter, or from anything provided to the Teller, that Mr. Egan was then authorized to bind the Association as to something so fundamental as substituting names of authorized signatories. Reference is made in the letter to a meeting held on March 29, 1978, which allegedly authorized the named persons to transact business for plaintiff, but no resolution or minutes of the alleged meeting was provided. The other letter dated May 15, 1978, signed solely by the fictitious Thomas L. Coffin, makes reference to a resolution dated May 8, 1978, which purported to authorize Bernard C. Packo to transact business. No copy of that resolution was provided. A new signature card was provided which contained a Resolution printed on Deseret Federal's standard card form, certified to solely by the alleged Thomas L. Coffin under date of May 15, 1978, who signed as the then Secretary of the organization. No verification by way of Minutes or otherwise was presented or requested to assure that the assertions by the alleged Mr. Egan or the alleged Mr. Coffin represented actions authorized by the Association. Prudent practice may have required Mr. Packo to provide a document containing a sign off by all four prior original signatories in order to effectuate a change of signature authorization and substitution of a new signature card. But under the facts as presented by Mr. Packo, that would not have been possible because the Teller was told (falsely) that one of the officers was dead. This was all the more reason to require some reliable evidence that Mr. Packo indeed was authorized to present the signature of Thomas L. Coffin, along with his own, as binding on the Association. This might have been satisfied by the presentation of reliable documentation, such as an exemplified copy of the corporate minutes and/or resolution, or a form containing signature guarantees. Such documentation was not provided, however, and no further inquiry was made. By an overlay seal on the Certificate of Deposit, the address of the plaintiff was changed from the address which had always appeared in the bank records. This constituted an irregularity because it was the first and only notice defendant had received as to an alleged change of address, and defendant's records showed that notices of accrued interest had always been sent to the original address. No inquiry was made as to when the address change took place. The presigned promissory note, executed by Mr. Coffin in blank, was itself an irregularity. The crucial Withdrawal Slip, which the Teller thought Mr. Packo brought with him, turned out to be one of the forms under the Promissory Note signed in blank, so that the signature of Mr. Coffin thereupon was only a carbon signature. If this required another original signature, as was the testimony, it had

not been so signed by the alleged Mr. Coffin. The Teller was unaware that the Promissory Note forms served the aforesaid dual purpose until that fact was called to his attention at trial.

## ANALYSIS

The crucial issue is whether the Utah Fiduciaries Act applies to this situation. If it applies, the transaction by the financial institution would be valid even if there were negligence on the part of the institution. Indeed, the Act was meant to facilitate banking and financial transactions by giving relief from liability to those who deal with fiduciaries, except where they have knowledge that the fiduciary is breaching his duty to his principal, or knowledge of facts which would amount to bad faith as applied to dealings with the fiduciary. *Sugarhouse Finance Co. v. Zions First National Bank*, 21 Utah 2d 68, 440 P.2d 869 (Utah 1968). Once the Fiduciaries Act applies, there is a presumption of regularity as to the acts of the fiduciary, and the financial institution need not "require a demonstration of authority" in connection with the transaction. Id. at 871.[1] The threshold inquiry, then, is whether the Act applies to the fact situation in this case. As relates to payments made to fiduciaries, the Act provides:

A person, who in good faith pays or transfers to a fiduciary any money or other property *which the fiduciary as such is authorized to receive*, is not re-

sponsible for the proper application thereof by the fiduciary; and no right or title acquired from the fiduciary in consideration of such payment or transfer is invalid in consequence of a misapplication by the fiduciary. Utah Code Ann. 22-1-2. (Emphasis added.)

The Tenth Circuit Court of Appeals, in connection with this remand, stated that the authority referred to in the Act "apparently includes actual, implied or apparent authority." 735 F.2d at 388. In the case at bar, defendant had knowledge that the actual authority of Mr. Packo was restricted in that two signatures were required to transact business. Accordingly, before the Act can be said to apply in this case, there must be a *fiduciary* who acts with *apparent* authority. An officer of a corporation is a fiduciary under the Act. U.C.A. 22-1-1. Although there is doubt whether defendant had good cause to think so, for purposes of this analysis the Court assumes that the alleged Mr. Packo was in fact Mr. Bernard Packo, and hence a "fiduciary" within the meaning of the Act.[2]

The next and most significant threshhold inquiry is whether Mr. Packo as a fiduciary was *apparently* authorized, acting alone, to consummate this transaction and to receive the funds. The Utah court has recognized that reasonable reliance by a bank on ostensible authority of only one of two signatories could justify honoring such in a proper case. *Movie Films, Inc. v. First Security Bank of Utah*, 447 P.2d 38 (Utah

---

1. The *Sugarhouse Finance* case involved a bank deposit situation under Section 9 of the Act rather than payments to the fiduciary as in a loan transaction under Section 2 of the Act. In *Sugarhouse* there was no issue of threshold authority or apparent authority in that the signature of the manager of the corporation was acknowledged, along with another admittedly valid signature, to evidence adequate authority to draw checks on the corporate account. It was claimed that the bank acted negligently in permitting deposits into personal accounts of the admittedly authorized fiduciary. The Utah Supreme Court held that allegations of negligence, rather than actual knowledge and bad faith, would be insufficient to bind the bank. Accord, *Research-Planning, Inc. v. Bank of Utah*, 690 P.2d 1130 (Utah 1984). Cf. *Arvada Hardwood Floor v. James (Central Bank of Denver)*,

638 P.2d 828 (Colo Ct.App.1981). (Held, negligence prevented application of the Fiduciaries Act where it appeared that the bank was not dealing with a fiduciary authorized and empowered to endorse the checks in question.)

2. For the Act to apply, financial institutions must establish that the person claiming to be a fiduciary really is a fiduciary. Had inquiry been made directly with plaintiff even as to the status of Mr. Packo as a fiduciary this transaction probably would have been aborted. However, negligence in failing to verify fiduciary status is not a factor in reaching the result herein, since we assume that the person who claimed to be Bernard Packo was in fact Bernard Packo.

1968). (Held, bank was liable—no proof of reliance on ostensible authority.) But the Utah Court also has long recognized that one dealing with an agent is under a duty to ascertain the agent's authority despite his representations. *Dohrmann Hotel Supply Co. v. Beau Brummel, Inc.*, 99 Utah 188, 103 P.2d 650 (1940). Accord, *Bradshaw v. McBride*, 649 P.2d 74 (1982). Where payment is made by a financial institution to a fiduciary, Section 2 of the Uniform Fiduciaries Act requires that the fiduciary be "authorized to receive" that payment before the Act can be said to apply to the transaction. Accordingly, the bona fides of Mr. Packo's apparent authority to present the signature of Thomas L. Coffin along with his own, and any irregularities which would cast doubt and suspicion in this regard, would be subject to scrutiny. The "apparent" aspect of apparent authority requires observation of irregularities as well as indicia of authority. Where such irregularities cast reasonable doubt and suspicion as to the apparent authority of a fiduciary, there comes into being a duty of inquiry as to his authority. Here, the irregularities previously described should have alerted the defendant to make some prudent inquiry. Absent an explanation of such irregularities, it was not reasonable for defendant to rely upon the apparent authority of Mr. Packo. See *Walker Bank & Trust Co. v. Jones*, 672 P.2d 73 (Utah 1983); *J & J Food Centers, Inc. v. Selig*, 76 Wash.2d 304, 456 P.2d 691 (1969). In *Walker Bank*, the Court said that there must be reasonable and prudent reliance on apparent authority (672 P.2d at 75) and in *J & J Food*, the Court said:

> Facts and circumstances are sufficient to establish apparent authority only when a person exercising ordinary prudence, acting in good faith and conversant with business practices and customs, would be misled thereby, and such person has given due regard to such other circumstances as would cause a person of ordinary prudence to make further inquiry. 456 P.2d at 694.

The duty of inquiry may be easily discharged by making simple inquiry directly with the principal. If this had been done in the case at bar, the problem here presented would have been avoided.

The Court holds that defendant was on notice of irregularities in connection with the transaction, that defendant had a duty to inquire as to the apparent authority of Bernard Packo, and that having failed to make reasonable inquiry defendant was charged with notice that the presumed Bernard Packo lacked apparent authority to transact business for plaintiff. In all events, in view of irregularities in the transaction, defendant was not justified in relying upon his indicia of authority. Since the fiduciary here was not authorized, lacking apparent authority, the Uniform Fiduciaries Act did not apply to this transaction. For all of the reasons aforesaid, the Certificate of Deposit should be returned to plaintiff by the defendant.

This opinion shall constitute Findings of Fact and Conclusions of Law pursuant to Rule 52, Federal Rules of Civil Procedure. Counsel for plaintiff is directed to prepare and submit to the Court an appropriate form of Judgment within ten days of the date of this Memorandum Decision and Order.

IT IS SO ORDERED.