This appeal is the result of an order by the Circuit Court of Montgomery County *Page 599 
granting appellee's (American Express, Inc.) motion for summary judgment.
In the summer of 1972 appellant (Robert A. Martin) applied for and was issued an American Express credit card. Approximately three years later, in April of 1975, Martin gave his credit card to a business associate named E.L. McBride. The reason for this action by Martin was apparently to enable McBride to use the card for the purpose of a joint business venture into which the two men had entered. Martin claimed that he orally authorized McBride to charge up to $500 on the credit card. However, in June of 1975 Martin received a statement from American Express which indicated that the amount owed on his credit card account was approximately $5,300. Martin denied that he had signed the credit card invoices which demonstrate that an amount has been charged to the cardholder's account. Upon learning of Martin's refusal to pay the charges incurred through the use of his credit card, American Express filed suit against Martin to obtain the money which it claimed Martin owed.
As the suit proceeded, American Express deposed Martin. In his deposition Martin admitted that he had given his credit card to McBride for use in a joint venture. Martin further stated that he did not know McBride very well, but that he (Martin) was not concerned about that fact because he told McBride not to charge more than $500 to his (Martin's) credit card account. Martin was also relying on a letter which he had sent to American Express prior to giving his card to McBride. Martin testified that in this letter he asked American Express not to allow the total charges on his account to exceed $1,000. Moreover, in his deposition Martin indicated that McBride subsequently returned the credit card to him (Martin) and shortly thereafter disappeared.
On the basis of this deposition American Express moved for a summary judgment pursuant to Rule 56, ARCP. The trial court granted this motion and Martin filed an appeal to this court.
We believe that the trial court properly entered an order granting a summary judgment in favor of American Express and therefore affirm the trial court's action.
Despite the various arguments presented by the attorneys in this case, we perceive only one issue before us on this appeal. That issue is whether the use of a credit card by a person who has received the card and permission to utilize it from the cardholder constitutes "unauthorized use" under the Truth in Lending Act, 15 U.S.C.A. § 1602 (o) and § 1643 (a). We hold that in instances where a cardholder, who is under no compulsion by fraud, duress or otherwise, voluntarily permits the use of his (or her) credit card by another person, the cardholder has authorized the use of that card and is thereby responsible for any charges as a result of that use.
Section 1643 (a)[1], which is of principal concern in this case, limits a cardholder's liability to $50 for the "unauthorized use of a credit card." However, the statutory limitation on liability comes into play only where there is an "unauthorized use" of a credit card. Credit Card Service Corp.v. Federal Trade Comm'n, 161 U.S.App.D.C. 424, 495 F.2d 1004
(1974). And section 1602 (o) defines "unauthorized use" as the "use of a credit card by a person other than the cardholder [a] who does not have actual, implied, or apparent authority for such use, and [b] from which the cardholder receives no benefit."
American Express argues that the actions of Martin in giving McBride the credit card clearly demonstrated that Martin was not entitled to rely on the $50 limitation for unauthorized use of a credit card. Conversely, Martin relies on the familiar principle of agency law that a principal has the right to presume that his agent will act only within the sphere of his authority, and *Page 600 
that in the absence of circumstances sufficient to place him on notice, a principal will not be held liable for his failure to ascertain that his agent is acting beyond the scope of his authority. University Chevrolet Company v. Bank of Moundville,25 Ala. App. 506, 150 So. 557, cert. den. 227 Ala. 516,150 So. 560 (1933). Thus, Martin submits that he cannot be held liable for the acts of his agent in that the latter was authorized to charge only $500 to Martin's American Express account, yet exceeded his authority by charging in excess of that amount.
We fail to see the applicability of common law principles regarding agents and the scope of their authority to the statutory provisions in question. The Truth in Lending Act is to be liberally construed in favor of the consumer. Irvin v.Public Finance Company of Alabama, Ala.Civ.App., 340 So.2d 811
(1976). And its terms are to be strictly enforced. Irvin v.Public Finance Company of Alabama, supra. However, it is a well-settled rule of statutory construction that the plain language of a statute offers the primary guidance to its meaning. American Airlines, Inc. v. Remis Industries, Inc.,494 F.2d 196 (2d Cir. 1974). Accordingly, where the language found in the statute is clear and unambiguous and the words used therein plainly and distinctly demonstrate the intent of the framers of the statute, there is no occasion to resort to any other means of interpretation or to interject common law principles into the statutory provisions in question. SeeAmerican Airlines, Inc. v. Remis Industries, Inc., supra.
We believe Congress clearly indicated that "unauthorized use" of a card would occur only where there was no "actual, implied or apparent authority" for such use by the cardholder. In the present case Martin maintains that the actual, implied or apparent authority given by him to McBride was limited to the $500 amount which Martin told McBride not to exceed. Thus, Martin says he gave no authority for McBride to charge the large sum which eventually resulted in this suit. Furthermore, Martin asserts that prior to giving the card to McBride, he (Martin) wrote American Express and requested that its employees not allow the amounts charged to his credit card account to exceed $1,000. And since no such action was taken, Martin argues that any sum charged in excess of $1,000 constituted an "unauthorized" charge on his credit card.
We cannot accept either of the above contentions. McBride was actually authorized by Martin to use the latter's card. Martin admitted this fact. And the authority to use it, if not actual, remained apparent even after McBride ignored Martin's directions by charging over $500 to Martin's credit card account. Consequently, Martin was not entitled to rely on the provisions contained in section 1643 (a) and he must be held responsible for any purchases made through the use of his card.
Nor are we aware of any requirement, either by statute, contract or trade usage, which would compel a credit card issuer to undertake a policy whereby the issuer would see to it that charges on a cardholder's account do not exceed a specified amount. Such a policy would place a difficult and potentially disastrous burden on the issuer. We know of no authority which requires a card issuer to perform services of this nature and Martin has provided us with none. Rule 28 (a)(5), ARAP.
The express intent of Congress in enacting the Truth in Lending Act was to protect the consumer or cardholder against charges for the unauthorized use of his or her credit card and to limit his or her liability for such unauthorized use to a maximum of $50 providing, however, that the conditions set forth in the statute are complied with. First National CityBank v. Mullarkey, 87 Misc.2d 1, 385 N.Y.S.2d 473 (1976). We believe that § 1643 (a) clearly indicates that such protection is warranted where the card is obtained from the cardholder as a result of loss, theft or wrongdoing.[2] However, *Page 601 
we are not persuaded that section 1643 (a) is applicable where a cardholder voluntarily and knowingly allows another to use his card and that person subsequently misuses the card.
Were we to adopt any other view, we would provide the unscrupulous and dishonest cardholder with the means to defraud the card issuer by allowing his or her friends to use the card, run up hundreds of dollars in charges and then limit his or her liability to $50 by notifying the card issuer.[3] We do not believe such a result was either intended or sanctioned by Congress when it enacted section 1643 (a).
Based on the pleadings and deposition before it, the trial court concluded that there was no genuine issue as to any material fact and that the moving party (American Express) was entitled to a judgment as a matter of law. The court did not err in reaching such a conclusion. Accordingly, the judgment of the trial court granting American Express's motion for summary judgment is affirmed.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.
[1] "A cardholder shall be liable for the unauthorized use of a credit card only if the card is an accepted credit card, the liability is not in excess of $50 . . ., and the unauthorized use occurs before the cardholder has notified the card issuer that an unauthorized use of the credit card has occurred or may occur as a result of loss, theft, or otherwise."
[2] This construction is supported by two of the conditions for limitation of liability in unauthorized use situations under § 1643 (a). Those conditions are: (1) that the card issuer has provided the cardholder with a self-addressed, pre-stamped notification to be mailed by the cardholder in the event ofloss or theft of the credit card; and (2) that the unauthorized use occurs before the cardholder has notified the card issuer that an unauthorized use of the credit card has occurred or may occur as the result of loss, theft or otherwise.
[3] By this statement we do not mean to imply that Martin acted dishonestly or deceitfully in this matter. Indeed, he appears merely to be the victim of his own generosity.