**Monica OCLANDER, Appellant,**

v.

**FIRST NATIONAL BANK OF LOUISVILLE, Appellee.**

Court of Appeals of Kentucky.

Dec. 13, 1985.

---

Joseph V. Mobley, Louisville, for appellant.

Michael Troutman, Louisville, for appellee.

Before McDONALD, CLAYTON and DUNN, Judges.

DUNN, Judge.

Appellant, Monica Oclander, appeals from the summary judgment of the Jefferson Circuit Court against her in the sum of $11,319.43 with 12% interest from March 23, 1983, and costs on the appellee bank's suit on credit card charges made on appellant Monica's Mastercard open end credit plan with the bank. We affirm.

We need not burden this opinion with a detailed factual presentation of this case inasmuch as its facts are of record and the parties and their counsel are familiar with them. We recite only those necessary to this appeal.

The credit card charges in question were made by Bonifacio Aparicio, appellant's estranged husband and co-defendant. The account was opened October 20, 1981, with cards issued to both. The credit limit was $400.00. In July 1982, Monica notified the bank that she was separated from Bonifacio. It "blocked" the account from additional charges and by letter forwarded to her advised her how to apply for and use its standard divorce and separation affirmation form to be completed and returned to the bank to restore her credit. She completed and returned them on August 9, 1982, indicating she had destroyed one of the two credit cards issued to her and Bonifacio and retained the other. Relying on this representation, the bank "unblocked" the account under the impression it was for her credit alone. Apparently she had not destroyed the one because various charges were made on the account ostensibly by Bonifacio in Spain between October 29, 1982, and November 30, 1982, the card's expiration date. It is with these charges we are concerned.

Summary judgment is proper only when the trial court, drawing all factual inferences in favor of the non-moving party, can conclude that there are no issues as to any material fact and that the moving party is entitled to judgment as a matter of law. CR 56.03; *Conley v. Hall*, Ky., 395 S.W.2d 575 (1965). Based upon our review of the record as it stood at the time of the trial court's ruling on the motion for summary judgment, we are convinced that that standard was satisfied in this case.

Congress recognized some time ago that the area of credit card liability needed to be dealt with in a uniform manner. Accordingly, 15 U.S.C.A. § 1643 provides protection for a card holder against "unauthorized" charges made on an account. Obviously, this was to protect the card holder in cases where the card had been stolen or lost and was being used to make "unauthorized" charges. § 1643 limits the liability

of a card holder where there has been "unauthorized use." Title 15 U.S.C.A. § 1602(*o*) defines the term "unauthorized use" to mean "a use of a credit card by a person other than the card holder who does not have actual, implied, or apparent authority for such use and from which the card holder receives no benefit." If the person using the card has either actual, implied, or apparent authority then the charges are authorized and the limitations imposed by § 1643 do not apply and Ms. Oclander would be liable for all charges made on the account as set out under the "Terms of Agreement." Thus, the issue of liability turns on whether the charges made by Bonifacio Aparicio were authorized.

"Apparent authority exists where a person has created such an appearance of things that it causes a third person to reasonably and prudently believe that a second party has the power to act on behalf of the first person." *Walker Bank & Trust Company v. Jones*, Ky., 672 P.2d 73, 75 (1983) citing *Wynn v. McMahon Ford Company*, Mo.App., 414 S.W.2d 330, 336 (1967).

In the present case, the Bank had sent a "Divorce and Separation Affirmation" along with a letter setting out what needed to be done to release Ms. Oclander from liability. The letter was specific and stated as follows:

> Be advised that signing this in no way releases either party at this time, that the individual to be responsible must complete the application in full, both to update our file and to determine whether or not they qualify for an account in their name alone. If they do qualify for credit in this manner, the other party's name will be dropped. Otherwise, no charges are to be made on this account and both parties are responsible until the balance is reduced to zero.

The Bank then stated that it had "blocked" the account and that no further charges were to be made until the conditions in the above letter were met. Obviously, the intention of the Bank was to protect both itself and its customer from the abuses that have occurred in this case. Ms. Oclan-

der stated that she was in possession of both the cards and destroyed one and retained the other for her use. Relying on these statements, the Bank removed the "block" from the account and Ms. Oclander was allowed to continue making charges on the account. What the Bank requested of Ms. Oclander was not unreasonable and would have protected all concerned if Ms. Oclander's statements had been accurate.

As was the case in *Walker Bank & Trust Company v. Jones, supra,* Bonifacio Aparicio did in fact have a card in his possession with his name on it as a joint card holder and presented the card to merchants who had no reason to question his authority to use it. Mr. Aparicio was in possession of a card which was a representation to merchants (third parties) to whom they were presented that he (second-parties/card bearers) was authorized to make the charges. This is not a case where charges were made on an expired card, or the card was obtained through fraud or other wrongdoing. Mr. Aparicio was actually in possession of one of the cards and at all times was ostensibly authorized to make charges on the account. If Ms. Oclander had accurately explained the situation to the Bank and told them that Mr. Aparicio was in possession of one of the cards, or at the very least, that she did not have possession of both cards, then the Bank would have maintained the "block" it had originally placed on the account in July, and none of the charges made during Mr. Aparicio's buying spree would have been chargeable to the Bank.

The Bank did not even require that the cards be surrendered but only that they be accounted for by Ms. Oclander. Ms. Oclander failed to do so, and as a result the Bank has suffered damages for which she should be held accountable.

We find no merit to Monica's argument that there is a material dispute of fact over the bank's delay in placing an "overseas block" on the account. We find none. It placed the "block" as soon as it could after it became apparent something was amiss.

The summary judgment of the Jefferson Circuit Court is AFFIRMED and pursuant to 2(a) of the Order Designating the case as a Special Appeal, the application of CR 76.20 and CR 76.32, as well as other appropriate rules of civil procedure for further appellate steps, are reinstated effective the date of this opinion.

All concur.