MASTERCARD, a part of Consumer Credit
Division of First Wisconsin National Bank of
Milwaukee, a national banking corporation,
Plaintiff-Appellant,

v.

TOWN OF NEWPORT, a municipal corporation,
Lawrence Bough, Clerk, Defendant-Respondent.

Court of Appeals

*No. 86–0365. Submitted on briefs July 8, 1986.——Decided
September 11, 1986.*

(Also reported in 396 N.W.2d 345.)

For the plaintiff-appellant, the cause was submitted on the briefs of *James Evenson* and *Quale, Hartmann, Bohl & Evenson,* of Baraboo.

For the defendant-respondent, the cause was submitted on the brief of *Steven F. Toepel* and *Brynelson, Herrick, Bucaida, Dorschel & Armstrong,* of Wisconsin Dells.

Before Gartzke, P.J., Dykman and Eich, JJ.

GARTZKE, P.J.   First Wisconsin National Bank appeals from a judgment for $50 against the Town of Newport. The judgment arises out of purchases exceeding that amount the town clerk charged to a credit card the bank had issued in the town's name. The issue is whether, as the trial court held, the purchases were an "unauthorized use" of the credit card, within the meaning of the federal Truth in Lending Act, 15 U.S.C. sec. 1602(o), consequently limiting the town's liability to $50 under 15 U.S.C. sec. 1643(a). We disagree with the trial court's holding and therefore reverse.

The facts are agreed. In 1977 Newport applied to First Wisconsin for a corporate Mastercard account. The town obtained the credit card to enable its clerk to charge fuel for the town hall, but the application does not state that fact. The application states that Newport:

> shall be liable for all credit extended to any person presenting [the] charge card until company delivers . . . written notice that such card has been lost or

stolen or returns such card advising ... in writing that the authority of the agent or employee named thereon has been revoked.

The bank opened the account and issued the credit card in the name of "Town of Newport." The town clerk used the card not only for official purposes but also to charge hotel and restaurant expenses and clothing and gift shop purchases for her personal use. The personal purchases were made at unspecified dates from 1980 through April 1983. The town did not notify the bank of any improper or unauthorized use.

15 U.S.C. sec. 1643 provides in relevant part:

(a)(1) A cardholder shall be liable for the unauthorized use of a credit card only if— ... (B) the liability is not in excess of $50; ....

15 U.S.C. sec. 1602(o) provides:

The term "unauthorized use," as used in [15 U.S.C. sec. 1643], means a use of a credit card by a person other than the cardholder who does not have actual, implied, or apparent authority for such use and from which the cardholder receives no benefit.

The trial court held that although the town clerk was authorized to possess the card and to use it for business-related purposes, she had no authority to use it for personal purchases. Since the town received no benefit from the personal purchases, the court concluded that the town's liability is limited to $50.

Because the facts are undisputed, whether the town clerk's purchases constituted an "unauthorized" use within the meaning of 15 U.S.C. sec. 1602(o) is a question of law. *Nottelson v. ILHR Department*, 94 Wis.2d 106, 115-16, 287 N.W.2d 763, 768 (1980). We decide an

issue of law without deference to the conclusion of the trial court. *First Nat. Leasing Corp. v. Madison*, 81 Wis.2d 205, 208, 260 N.W.2d 251, 253 (1977).

The elements of an "unauthorized use," as defined in sec. 15 U.S.C. sec. 1602(o), are: (1) the use of a credit card by a person other than the cardholder, (2) the other person does not have actual, implied or apparent authority for such use and (3) the cardholder receives no benefit from such use. Because the elements are conjuctively stated, all three must be met. That the first and third elements have been met is uncontested.

Reasonable persons can arrive at different understandings of the second element. "[A] use of a credit card by a person other than the cardholder who does not have actual, implied or apparent authority for such use" could refer to authorization for the specific individual purchase or to authorization for use in general. The reference in 15 U.S.C. sec. 1602(o) to "a use" rather than "the use" fails to clarify the definition of unauthorized use. The Truth in Lending regulations, known as Regulation Z, describe "unauthorized use" as "*the* use by a person, . . . ." 12 C.F.R. sec. 226.12(b)(1) n. 22 (emphasis added).

██

Because the statutory definition of "unauthorized use" can be read differently by reasonable persons, it is ambiguous. *Kollasch v. Adamany*, 104 Wis.2d 552, 561, 313 N.W.2d 47, 51–52 (1981). We therefore must employ judicial rules of statutory construction to ascertain the intention of the legislature. We look to the statutory context, subject matter, scope, history and object to be accomplished. *St. John Vianney Sch. v. Janesville Ed. Bd.*, 114 Wis.2d 140, 151, 336 N.W.2d 387, 391 (Ct. App. 1983).

The statutory context includes provisions regarding loss or theft. 15 U.S.C. sec. 1643(a)(1)(D) and (E) provide that the cardholder is liable for an unauthorized use only if the issuer provided a description of the means by which the cardholder may notify the issuer of loss or theft and if the unauthorized use occurs before the issuer has been notified that an unauthorized use of the credit card has occurred or may occur as the result of "loss, theft, or otherwise."

These loss or theft provisions have affected judicial construction of "unauthorized use" in U.S.C. sec. 1602(o). In *Martin v. American Express, Inc.*, 361 So.2d 597 (Ct. App. Ala. 1978), the court concluded that the $50 limitation applies where the card is obtained from the cardholder by loss, theft or wrongdoing. The *Martin* court was "not persuaded that sec. 1643(a) is applicable where a cardholder voluntarily and knowingly allows another to use his card and that person subsequently misuses the card." *Id.* at 600–01. The *Martin* court said that any other construction would allow a cardholder to defraud the issuer by allowing others to run up large charges on the card and then limit the cardholder's liability to $50 by notifying the issuer. The court held that because the defendant cardholder had authorized another person to charge up to $500 on the holder's credit card, the cardholder was liable for the full $5,300 the other person charged on the card.

A similar result was reached in *Cities Service Co. v. Pailet*, 452 So.2d 319 (La. App. 4th Cir. 1984). The defendant cardholder gave his credit card to an employee of his company for a limited business purpose. The employee used the card for other purposes. Relying on *Martin v. American Express, supra,* the *Cities Service* court held that in the absence of evidence that the card

was obtained from the cardholder by loss, theft or wrongdoing, the $50 limitation in 15 U.S.C. sec. 1643 was unavailable to him. *Id.* at 321. The liability limitation has also been held to be unavailable where the cardholder failed to retake a card from a previously authorized spouse after divorce. *Walker Bank & Trust Co. v. Jones,* 672 P.2d 73 (Utah 1983); *Oclander v. First Nat. Bank of Louisville,* 700 S.W.2d 804 (Ct. App. Ky. 1985)[1]

The legislative history of the statute is consistent with the view that the $50 limitation is intended to apply only if the card has been lost or stolen. The proposed liability limitation amendment which led to the adoption of the relevant statutory language was the subject of a 3-day hearing.[2] The leitmotif of the hearing was

---

[1] Professor Weistart comments as follows on the significance of the circumstances in which the misuser of a credit card acquired it:

> In many instances of credit card use by persons other than the card holder, the fact that the user was given even a modicum of authority to use a card will significantly affect whether the user's apparent authority extends beyond the originally intended authorization. Despite the absence of direct contact between the cardholder and the merchant who enters it, authorized control of the card by the user may itself be a sufficient manifestation to others to create an obligation in the cardholder. An important element of this creation of apparent authority is the cardholder's initial consent to the transfer and use. Thus, although specific agency precedent is lacking, it is unlikely that mere possession of the card will be regarded as a manifestation attributable to the cardholder where his relinquishment was involuntary, as in the case of theft.

*See* Weistart, *Consumer Protection in the Credit Card Industry; Federal Legislative Controls,* 70 Mich. L. Rev. 1476, 1520 (1982).

[2] A Bill to Safeguard the Consumer by Requiring Greater Standards of Care in the Issuance of Unsolicited Credit Cards and by Limiting the Liability of Consumers for Unauthorized Use of Credit Cards, and for Other Purposes, 1969. Hearing on S. 721 Before the

that the issuer would bear most of the loss for misused credit cards. The circumstances before us were not specifically addressed. However, the term "unauthorized use" as affecting liability was most often discussed in the context of lost or stolen credit cards.

We conclude that when, as here, a credit cardholder authorizes another to use the card for a specific purpose, and the other person uses it for another purpose, such a use is not an "unauthorized use" within the meaning of 15 U.S.C. sec. 1602(o). Because the Town of Newport had authorized its town clerk to use the credit card issued in the name of the town, the $50 liability limitation in 15 U.S.C. sec. 1643(a) is inapplicable. We therefore reverse the judgment and remand for further proceedings consistent with this opinion.

*By the Court.*—Judgment reversed and cause remanded for further proceedings consistent with this opinion.

---

Subcomm. on Financial Institutions of the Senate Comm. on Banking and Currency, 91st Cong. 1st Sess. (1969).