## S91G0381. AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC. v. WEB, INC. et al.

### (405 SE2d 652)

HUNT, Justice.

This case involves statutory construction of § 1643 of the federal Truth-in-Lending Act (TILA), regarding liability for credit card use. 15 USCA § 1643. The Court of Appeals held the card issuer has a duty to mitigate damages to the holder of a credit card account for misuse of a credit card by an authorized user. *WEB, Inc. v. American Express Travel Related Services Co.,* 197 Ga. App. 697 (399 SE2d 513 (1990). We reverse.

WEB, Inc. opened a corporate credit account with American Express in New York. Under the agreement, credit cards were issued to William E. Becker, the "individual applicant," and to his wife, his daughter, and Madelyn Lazich, the "additional applicants," who were authorized to charge to the corporate account. Under the agreement with American Express, the company and the individual applicant are responsible for all the charges made to the account, while the additional applicants are liable only for their own charges.

Lazich, a real estate broker who had a relationship with Becker, was hired by Becker to open an Atlanta office of WEB. When the relationship soured after about a year, she went on a spending spree, charging on the American Express card alone over $27,000. Lazich used the card itself on some of these charges, but on others, after WEB retrieved her card, used only the account number.

WEB filed this declaratory judgment action seeking a ruling that it was not responsible for Lazich's personal charges. American Express counterclaimed for the amount it claimed was due. The trial court added Becker as a party defendant[1] and granted summary judgment to American Express on its counterclaim.

While it recognized Lazich was an authorized user under TILA,

---

[1] The Court of Appeals reversed the addition of Becker, a New Jersey resident, as a defendant. Because the personal jurisdiction question was a fact determination by the Court of Appeals, we do not reach this issue on certiorari.

the Court of Appeals, relying on its pre-TILA case of *Standard Oil Co. v. State Neon Co.*, 120 Ga. App. 660 (171 SE2d 777) (1969), held that the Georgia law regarding mitigation, as expressed in *Neon*, applied. It concluded that fact issues remained concerning American Express' steps to mitigate damages after it was notified of Lazich's misuse of the credit card and reversed the grant of summary judgment.

1. The Truth-in-Lending Act sets out the terms to be used in applying its principles. 15 USCA § 1602 (m) provides:

> The term "cardholder" means any person to whom a credit card is issued or any person who has agreed with the card issuer to pay obligations arising from the issuance of a credit card to another person[;]

while subsection (o) defines "unauthorized use:"

> The term "unauthorized use," as used in section 1643 of this title, means a use of a credit card by a person *other than the cardholder* who does not have actual, implied, or apparent authority for such use and from which the cardholder receives no benefit. [Emphasis supplied.]

15 USCA § 1643, sets out the conditions for limiting the liability of a cardholder for the "unauthorized use" of a credit card. Subsection (a) (1) (E) provides:

> A cardholder shall be liable [up to $50] for the unauthorized use of a credit card only if — . . . (E) the unauthorized use occurs before the card issuer has been notified that an unauthorized use of the credit card has occurred or may occur *as the result of loss, theft, or otherwise*; . . . [Emphasis supplied.]

Thus, under § 1643, a cardholder is protected from liability only from "unauthorized use" and is not protected from misuse by an authorized user. *Martin v. American Express*, 361 S2d 597, 600 (Ala. 1978). WEB argues, however, that when it gave notice to American Express, Lazich became an "unauthorized user" subject to the limitations of § 1643.

In setting out the limits of the liability of credit cardholders in § 1643, Congress did not provide for mitigation of cardholders' liability where notice of misuse is given to the issuer.[2] *Martin v. American*

---

[2] Cases from other jurisdictions reflect the problems inherent in any other resolution of

*Express*, supra, 361 S2d at 600. We must conclude that Congress intended no such limitation and notice of misuse does not convert the cardholder into an "unauthorized" user.[3] Lazich, herself a cardholder, was, beyond doubt, an authorized user as to all the charges she made. The Court of Appeals correctly held Lazich's charges were not "unauthorized" within the meaning of 15 USCA § 1602.

2. By enacting the credit card provisions of TILA, Congress intended to prohibit the unsolicited distribution of credit cards, to make the fraudulent use of a credit card a federal crime, and to limit cardholder liability for "unauthorized use." 15 USCA § 1601; *Transamerica Ins. Co. v. Standard Oil Co.*, 325 NW2d 210, 213 (N.D. 1982). Being remedial in nature, its requirements must be liberally construed to protect consumers, while at the same time, strictly enforced to achieve the legislative goal of national standardization. *Glenn v. Trust Co. of Columbus*, 152 Ga. App. 314, 318-319 (262 SE2d 590) (1979). With these goals in mind, it is clear that while federal law deals with limitation of liability for "unauthorized" charges as defined in the act, it does not regulate suits on account for *authorized* charges. Consequently, state law regulating such suits is not preempted by the act and controls.[4]

3. WEB thus turns to state law to argue the defense of mitigation. WEB argued, and the Court of Appeals held, in reliance on *Standard Oil Co. v. State Neon Co.*, supra, that WEB is entitled to relief in mitigation because American Express took no steps to prevent Lazich from continuing to use the credit card after WEB notified American Express of her misuse and because American Express al-

---

this question. For example, in *Martin v. American Express*, supra, Martin gave his joint-venture partner a credit card and sent a letter notifying American Express he had limited his partner's permission to charge to $500 and sought to impose a $1,000 ceiling on the account. The court held American Express was not obligated to police the partner for Martin.

[3] In *Martin v. American Express*, supra, 361 S2d at 601, the Alabama court observed: Were we to adopt any other view, we would provide the unscrupulous and dishonest cardholder with the means to defraud the card issuer by allowing his or her friends to use the card, run up hundreds of dollars in charges and then limit his or her liability to $50 by notifying the card issuer. We do not believe such a result was either intended or sanctioned by Congress when it enacted section 1643 (a).

[4] 12 CFR § 226.28 (d), provides for preemption of state law by federal law for credit card and charge card disclosure requirements under 15 USCA § 1637. It is instructive that 12 CFR § 226.28 (a), provides:

state law requirements that are inconsistent with the requirements contained in . . . chapter 2 (Credit Transactions) . . . of the act and the implementing provisions of this regulation are preempted to the extent of the inconsistency. A State law is inconsistent if it requires a creditor to . . . take actions that contradict the requirements of the Federal law. A State law is contradictory if it requires the use of the same term to represent a different amount or a different meaning than the Federal law, or if it requires the use of a term different from that required in the Federal law to describe the same item.

See generally *Transamerica Ins. Co. v. Standard Oil Co.*, supra, 325 NW2d at 213.

lowed her to continue to charge by using the account number after she surrendered possession of the card to WEB.[5]

In *Standard Oil Co. v. State Neon Co.*, supra, 120 Ga. App. at 662, the Court of Appeals, applying the common-law rule of mitigation of contracts now codified at OCGA § 13-6-5,[6] held:

> notice given by the [cardholder] to the [card issuer] is clearly sufficient to put the [card issuer] on notice of unauthorized use and the possibility of charges which the [cardholder] would refuse to pay, and to impose on the [card issuer] the duty to act in a reasonable manner to reduce any losses that might occur by reason of the *unauthorized* use of the outstanding card, . . . [Emphasis supplied.]

Thus, the Court of Appeals, in *Neon*, held the credit card issuer should have taken steps to mitigate the damages caused by an *"unauthorized"* user after the company returned its cards and closed its account.[7]

But, as we have already held in Division 1, Lazich is not an unauthorized user and consequently *Neon* is inapplicable. See fn. 7, supra. Furthermore, OCGA § 13-6-5 does not apply to an absolute promise to pay. *Reid v. Whisenant*, 161 Ga. 503, 509-510 (131 SE 904) (1925); *Haley v. Oaks Apartments*, 173 Ga. App. 44, 46 (325 SE2d 602) (1984). Therefore, in so far as *Neon* may be construed to explicate state law on the duty of a credit card issuer to mitigate damages upon notice of misuse by an authorized user, where there is an absolute promise to pay by the cardholders, it must be, and hereby is, disapproved. State law requires that WEB honor its contract with American Express and pay all charges made by its cardholders.

Because neither TILA nor state law provide a mitigation defense to WEB's liability on Lazich's account, it follows that American Express was entitled to summary judgment.

---

[5] The authority (apparent or otherwise) to use a credit card is withdrawn as provided in the cardholder's contract with the issuer, usually, upon return of the credit card to the issuer and closing of the account. *Walker Bank &c. Co. v. Jones*, 672 P2d 73 (Utah 1983). The credit card agreement between WEB and American Express provided the company and the authorized users agreed "to be liable for charges . . . unless the Card(s) is (are) cut in half and both halves are returned."

[6] "Where by a breach of contract a party is injured, he is bound to lessen the damages as far as is practicable by the use of ordinary care and diligence."

[7] *Neon* was decided before the TILA credit card provisions were enacted in 1970. In *Neon*, when a fired employee failed to return his company credit card, the company returned the rest of its cards to the issuer and asked to close the account before the employee made the charges at issue. Id. at 660. Because the use in *Neon* would have been "unauthorized" under TILA, the liability of the cardholder in that case would be governed today by the $50 maximum liability of 15 USCA § 1643.

*Judgment reversed. All the Justices concur.*

DECIDED JULY 3, 1991 —
RECONSIDERATION DENIED JULY 24, 1991.

*Alston & Bird, John I. Spangler III, H. Douglas Hinson,* for appellant.

*Moss, Clifford, Moss & Rothenberg, Joel Y. Moss,* for appellees.

*Page, Scrantom, Harris & Chapman, W. Marion Page,* amicus curiae.