Paul R. STIEGER, Appellant,

v.

CHEVY CHASE SAVINGS BANK, F.S.B., Appellee.

No. 94–CV–493.

District of Columbia Court of Appeals.

Argued June 19, 1995.
Decided Oct. 19, 1995.

Paul R. Stieger, pro se.

Christopher C. Fogleman, Rockville, MD, for appellee.

Before WAGNER, Chief Judge, RUIZ, Associate Judge, and PRYOR, Senior Judge.

Opinion for the court by Senior Judge PRYOR.

Dissenting opinion by Associate Judge RUIZ, at p. 485.

PRYOR, Senior Judge.

For the first time we are asked to determine whether a credit cardholder who permits use of the card by another for a specific purpose is liable for other uses not specifically authorized. The precise issue is whether, in such circumstances, the card user had "apparent authority" to use the card in the context of the provisions of the Truth-in-Lending Act, 15 U.S.C.A. §§ 1601 *et seq.* (1988). We agree with the Superior Court that for thirteen of the fifteen disputed charges the matching of the signature, combined with the cardholder's voluntary relinquishment of the card for a third party's use, constitutes such "apparent authority" under the Act, thereby making appellant liable for the full amount of the thirteen charges. We, therefore, affirm the decision of the Superior Court.

## I.

On November 10, 1992, appellant brought suit against Chevy Chase Bank, F.S.B. ("Chevy Chase") claiming he should not be held liable for certain charges credited to his Chevy Chase Visa card. Appellant voluntarily gave his credit card to a Ms. Garrett for the limited purpose of renting a car and for hotel lodging during a business trip. Appellant contacted both the car rental agency and the hotel to determine what type of authorization would be needed for Ms. Garrett to use his Visa card. Both companies informed him that he must write a letter authorizing the charges. Appellant asserts that he wrote both companies, but was unable to produce a copy of the letter to the hotel, which he contends limited his liability to $350.00.

Shortly after the conclusion of Ms. Garrett's business trip, appellant learned that she had made several other charges he had not specifically authorized. His signature apparently had worn off the back of his credit card, and Ms. Garrett signed it as "P. Stieger" rather than Paul Stieger. On thirteen of the fifteen charges in dispute, Ms. Garrett had signed the charge slip "P. Stieger," and on the other two she signed her own name.[1] Appellant has obtained a judgment against Ms. Garrett for $3200.00, but only $750.00 has been collected, and Ms. Garrett can no longer be located. Therefore, this action was brought to contest Chevy Chase's refusal to dismiss the charges as unauthorized.

Commissioner Diaz ruled in favor of Chevy Chase on all fifteen charges. Appellant appealed to the Superior Court asserting that the charges were unauthorized under the Truth-In-Lending Act. After review of the case, a judge of the Superior Court held that the Commissioner "had a factual and legal basis upon which she could properly decide that the voluntary relinquishment of the cardholder's credit card for one purpose gives the bearer apparent authority to make additional charges." (Citing *Martin v. American Express, Inc.,* 361 So.2d 597, 599–600 (Ala.Civ.App.1978)).

The Superior Court judge also considered the Commissioner's reasonableness analysis. The Superior Court found that the merchants acted reasonably in accepting appellant's credit card in thirteen of the fifteen charges where the name signed ("P. Stieger") matched the signature on the card. However, the court reversed the two charges where Ms. Garrett had signed her own name. Appellant filed an application for allowance of

---

1. Twenty-two charges were made by Ms. Garrett, of which seven were dropped by the Bank prior to trial.

appeal, and on April 29, 1994 we granted the application.

## II.

■ In a broad sense, the resolution of this matter involves an economic consideration of whether the cardholder, card issuer, or merchant should bear the financial responsibility in the circumstances presented. The Truth–In–Lending Act was enacted "in large measure to protect credit cardholders from unauthorized use perpetrated by those able to obtain possession of a card from its original owner." *Towers World Airways Inc. v. PHH Aviation Systems, Inc.,* 933 F.2d 174, 176 (2nd Cir.), *cert. denied,* 502 U.S. 823, 112 S.Ct. 87, 116 L.Ed.2d 59 (1991). The Act specifically limits liability for the cardholder to a maximum of $50 for charges made by third parties that are "unauthorized." 15 U.S.C.A. § 1643(a). However, the Act does not limit liability for the cardholder for third party charges made with "actual, implied or apparent authority." 15 U.S.C.A. § 1602(*o* ).

■ The essential question on appeal is whether the disputed charges were incurred by an "unauthorized user" under the Act. The statute specifically incorporates agency concepts by defining "unauthorized use" as "a use of a credit card by a person other than the cardholder who does not have actual, implied, or *apparent* authority for such use and from which the cardholder receives no benefit." 15 U.S.C.A. § 1602(*o*) (emphasis added); *see also* 12 C.F.R. § 226.12(b)(1) n. 22 (stating same). Thus, our inquiry focuses on whether the relinquishment of a credit card to another for a limited purpose, which is then expanded by the user to make additional charges not authorized by the cardholder, is an "unauthorized" use under 15 U.S.C.A. § 1602(*o*), thereby limiting cardholder liability. Since actual or implied authority are not alleged in this case, the narrower issue is whether Ms. Garrett had apparent authority to use the card.

■ Our cases reveal that "[a]pparent authority arises when a principal places an agent 'in a position which causes a third person to reasonably believe the principal had consented to the exercise of authority the agent purports to hold. This falls short of an overt, affirmative representation by a principal . . . .' " *Insurance Management of Washington, Inc. v. Eno & Howard Plumbing Corp.,* 348 A.2d 310, 312 (D.C.1975) (quoting *Drazin v. Jack Pry, Inc.,* 154 A.2d 553, 554 (D.C.1959)); *see also Feltman v. Sarbov,* 366 A.2d 137, 139 (D.C.1976) (stating same). Specifically, in this jurisdiction "apparent authority of an agent arises when the principal places the agent in such a position as to *mislead* third persons into believing that the agent is clothed with authority which in fact he does not possess." *Jack Pry, Inc. v. Harry Drazin,* 173 A.2d 222, 223 (D.C. 1961) (footnote omitted) (emphasis added).

■ "Though a cardholder's relinquishment of possession may create in another the appearance of authority to use the card, the statute clearly precludes a finding of apparent authority where the transfer of the card was without the cardholder's consent as in cases involving theft, loss, or fraud." *Towers, supra,* 933 F.2d at 177. As one court has stated:

> Where a credit cardholder, who was under no compulsion by fraud, duress, or otherwise, voluntarily permits the use of his or her credit card by another person, the cardholder has authorized the use of that card and is thereby responsible for any charges as a result of that use, even if he or she requested that the other person not charge over a certain amount or make charges on it for specified purposes. The user has apparent authority to use the card even after actual authority ceases; provided, however, that the cardholder is not liable for use of the card after the issuer has been notified that actual authority for others to use the card no longer exists.

*Standard Oil Co. v. Steele,* 22 Ohio Misc.2d 27, 489 N.E.2d 842, 844 (Ohio Mun.Ct.1985).

■ Nearly every jurisdiction that has addressed a factual situation "where a cardholder voluntarily and knowingly allows another to use his card and that person subsequently misuses the card," *Martin, supra,* 361 So.2d at 601, has determined that the agent had apparent authority, and therefore was not an "unauthorized" user under the

Act limiting liability for the cardholder. *See Towers, supra,* (concluding that Towers was liable for charges because Towers' consent and other conduct revealed the pilot's unrestricted access to the PHH card); *Martin, supra* (holding cardholder responsible for charges of business associate despite oral limitation of $500.00); *American Express Travel Related Serv. Co., Inc. v. Web, Inc.,* 261 Ga. 480, 405 S.E.2d 652 (1991) (concluding that company is responsible for employee's misuse of the credit card resulting in charges of $27,000.00); *Oclander v. First Nat'l Bank of Louisville,* 700 S.W.2d 804 (Ky.Ct.App.1985) (holding wife responsible for estranged husband's almost $12,000.00 in charges when wife mistakenly advised the bank that she had both cards in possession and the bank removed the "block" from the account); *Cities Serv. Co. v. Pailet,* 452 So.2d 319 (La.Ct.App.1984) (concluding that defendant liable for employees charges outside the scope of the limited business trip); *Standard Oil, supra,* (holding company responsible for employee's charges); *Walker Bank & Trust Co. v. Jones,* 672 P.2d 73 (Utah 1983) (concluding that spouse was responsible for husband's charges despite notifying bank of intention not to be responsible for husband's charges when husband still maintained apparent authority to use the cards because cards had not been returned to the bank or the account closed), *cert. denied,* 466 U.S. 937, 104 S.Ct. 1911, 80 L.Ed.2d 460 (1984); *Mastercard, Consumer Credit Div. of First Wisconsin Nat'l Bank of Milwaukee v. Town of Newport,* 133 Wis.2d 328, 396 N.W.2d 345 (Ct.App.1986) (holding town responsible for town clerk's personal charges); *c.f. Michigan Nat'l Bank v. Olson,* 44 Wash.App. 898, 723 P.2d 438 (1986) (reversing summary judgment where factual dispute over whether husband's girlfriend had been given card to use or husband had used the card himself).

■ However, when a voluntary relinquishment of the card to a third party who returns it after its use is then followed by an involuntary surrender, *i.e.* stolen, of the card to the same third party, there is an "unauthorized" use under the Act. *Blaisdell Lumber Co., Inc. v. Horton,* 242 N.J.Super. 98, 575 A.2d 1386 (App.Div.1990) (holding that plaintiff had not established card user as

agent with express, implied or apparent authority to use credit card when lover stole card and used it without authorization); *Vaughn v. United States Nat'l Bank of Oregon,* 79 Or.App. 172, 718 P.2d 769 (1986) (affirming jury verdict finding cardholder not liable to bank when, although previously giving his credit card and personal identification number to a third party for specific purchases, subsequent automatic teller withdrawal was the result of the third party stealing the card). No liability can attach to the cardholder when the card was not voluntarily relinquished, but rather was stolen. *Thomas v. Central Charge Serv., Inc.,* 212 A.2d 533 (D.C.1965); *c.f. Fifth Third Bank/ Visa v. Gilbert,* 17 Ohio Misc.2d 14, 478 N.E.2d 1324 (Ohio Mun.Ct.1984) (concluding that bank did not prove that unemancipated daughter was given access to credit card to make charges and therefore father not liable). In addition, if the cardholder notifies the card issuer that the card is being used in an unauthorized manner, the cardholder will not be liable for any charges made by the third party after the notice. *See Cities Serv., supra, Standard Oil, supra, but see American Express, supra,* (concluding that Act does not limit liability where notice is given to the issuer of the credit card).

We agree with these general principles because the voluntary relinquishment of the credit card, as distinguished from the stolen card situation, can often "mislead third persons into believing the agent is clothed with authority which in fact he does not possess." *Drazin, supra,* 173 A.2d at 223.

### III.

Appellant argues that he had the right to expect Ms. Garrett to use the credit card only for the charges he authorized, and that he cannot be held liable for his agent acting beyond the scope of her authority. Appellant also asserts that Ms. Garrett could not reasonably present herself as Paul Stieger, and that a merchant should be required to give greater scrutiny to the person using the card.

■ Turning to the specific facts in this case, appellant gave Ms. Garrett his

credit card to use. As the Superior Court noted, thirteen of the charges had the same signature as appeared on the back of the card. Appellant placed Ms. Garrett, by voluntarily giving her the card, "in such a position as to mislead third persons into believing that the agent is clothed with authority which in fact [s]he does not possess." *Jack Pry, Inc., supra,* 173 A.2d at 223. To a merchant, voluntary relinquishment combined with the matching of a signature is generally a reasonable indication of apparent authority to utilize the credit card. *See* 15 U.S.C.A. § 1643(a)(1)(F); 12 C.F.R. § 226.12(b)(2)(iii) & Supp. I at 341 (requiring the card issuer to provide a means of verifying the authority of the card bearer such as a signature, photograph, fingerprint or electronic or mechanical confirmation).

■■■■■ We agree with the Superior Court that the Commissioner "could properly conclude that the third-party merchants' actions were reasonable," and that the "voluntary relinquishment of the cardholder's credit card for one purpose gives the bearer apparent authority to make additional charges." However, we agree with the Superior Court that the same cannot be said of the two charges where Ms. Garrett signed her own name rather than "P. Stieger." It is an unreasonable extension of the apparent authority provided to Ms. Garrett for a merchant to accept charges, where the signatures do not match, without any additional factors to mislead the merchant into believing that the person presenting the card is the agent of the cardholder.

■■■■■ Appellant attempted to limit his authorization exclusively to the hotel and car rental company, and to a specific dollar amount for each. He testified he did this by writing letters to the two companies limiting the amount Ms. Garrett could charge. These letters to the two companies would limit his liability to the amounts stated in the letters if they were in fact received by the companies when the credit card was offered as payment. Mr. Stieger was able to produce only a copy

of the letter to the car company. The charge to the car company did not exceed the limit in the letter. However, Mr. Stieger was unable to produce a copy of the letter to the hotel that he asserts limited the amount Ms. Garrett could charge to $350. By testifying that he voluntarily gave his credit card to Ms. Garrett and wrote the hotel to authorize the charge, the bank has met its burden of showing apparent authority.[2] Since Mr. Stieger has not submitted a copy of the letter limiting his exposure to $350, we agree with the Superior Court that the Commissioner did not err in concluding that Mr. Stieger is liable for the full amount of the hotel charge in excess of the $350.

■■■■■ In sum, Mr. Stieger was in the best position to control the uses of his credit card by not relinquishing it to a third party he could not trust, by notifying the card issuer that his credit limit should be lowered to a specific dollar amount, thereby limiting his exposure, or by notifying the card issuer upon becoming aware of certain unapproved purchases that any further purchases are unauthorized. As one court has noted "[i]n four-party arrangements of this sort [cardholder, issuer, third party and merchant], it is totally unrealistic to burden the card issuer with the obligation to convey to numerous merchants whatever limitation the cardholder has placed on the card user's authority." *Towers, supra,* 933 F.2d at 179 (footnote omitted). The Truth–In–Lending Act, although generally designed to protect credit cardholders, specifically reveals a congressional preference that where apparent authority exists, under the circumstances, the cardholder should bear the financial responsibility. Mr. Stieger voluntarily relinquished his credit card to an unreliable person, and thereby put Ms. Garrett in a position to mislead merchants to believe that she possessed apparent authority to utilize the card. Under the circumstances, Mr. Stieger should bear the financial responsibility for the unau-

---

**2.** This fact was uncontroverted, and thus under settled concepts, appellant created an apparent authority in Ms. Garrett to reasonably use the card. It sometimes happens, as here, that appel- lant provided the factual basis for appellee's burden to proceed. A remand on this point would be futile.

thorized charges made by Ms. Garrett as determined by the trial court.

*Affirmed.*

RUIZ, Associate Judge, dissenting:

I agree with the majority that under the Truth-in-Lending Act the focus of our inquiry must be on whether Garrett had "apparent authority" to make the contested charges. I part company with the majority at the point that it decides that Garrett's act of forging Stieger's signature can be used to establish apparent authority. I also disagree with the majority's conclusion that the Bank's burden of proving Garrett's authority was discharged by Stieger's inability to produce a copy of the document *the Bank* relies upon for that authority. Therefore, I respectfully dissent.

## I.

As the majority observes, a principal purpose of the Truth-in-Lending Act is to protect credit cardholders from unauthorized use. The Act seeks to achieve that objective by limiting the liability of credit cardholders to $50 for "unauthorized" charges to their accounts. 15 U.S.C. § 1643(a)(1) (1988).[1] For the cardholder to have any liability at all for unauthorized use of her card, however, the card issuer must have undertaken to establish procedures to guard against unauthorized use, including providing "a method whereby the user of such card can be identified as the person authorized to use it." *Id.* § 1643(a)(1)(F).

The term "unauthorized" is defined to mean "use of a credit card by a person other than the cardholder who does not have actual, implied, or apparent authority for such use and from which the cardholder receives no benefit." 15 U.S.C. § 1602(*o*). The parties do not appear to dispute that Stieger received no benefit from the impugned charges. Other than with respect to one charge, a hotel charge in Oklahoma as to which Stieger testified he had authorized Garrett to charge up to $350, there is no dispute as to the existence of actual or implied authority. Therefore, the threshold legal question in determining Stieger's liability is whether Garrett was an unauthorized user or had "apparent authority" within the meaning of the statute to use Stieger's credit card.

Congress' reference to "actual, implied or apparent authority" would appear to necessarily incorporate some manner of common-law definition, whether by reference to state law or federal common law. The Federal Reserve Board, which has authority to promulgate regulations implementing the Truth–in–Lending Act, 15 U.S.C. § 1604(a), in its "Official Staff Interpretations" of Regulation Z, section 12(b) of which implements § 1643, states that "[w]hether such authority exists must be determined under state or other applicable law."[2] 12 C.F.R. pt. 226, supp. I, at 341 (1995). Consequently, it seems appropriate to look to common-law rules of agency, both generally and in the states in which Garrett made the contested

---

1. Section 1643(a)(1) provides in pertinent part:
   A cardholder shall be liable for the unauthorized use of a credit card only if—
   (A) the card is an accepted credit card;
   (B) the liability is not in excess of $50;
   (C) the card issuer gives adequate notice to the cardholder of the potential liability;
   (D) the card issuer has provided the cardholder with a description of a means by which the card issuer may be notified of loss or theft of the card, ...;
   (E) the unauthorized use occurs before the card issuer has been notified that an unauthorized use of the credit card has occurred or may occur as the result of loss, theft, or otherwise; and
   (F) *the card issuer has provided a method whereby the user of such card can be identified as the person authorized to use it.*

2. The Staff Interpretations do not appear intended to have legally binding effect, however. The introduction to the interpretations states that "[g]ood faith compliance with this commentary affords protection from liability under [a provision] of the Truth–in–Lending Act [that] protects creditors from civil liability for any act done or omitted in good faith in conformity with any interpretation issued by a duly authorized official or employee of the Federal Reserve System." Thus, the interpretations provide a safe harbor for creditors, but do not bind the courts (or other agencies) in their interpretation of the Act. Nevertheless, reference to the interpretation should serve as persuasive authority.

charges, which are Oklahoma, Texas, Virginia and the District of Columbia.

The common-law rule permits only the acts of the putative principal to be used in establishing apparent agency. For example, the Restatement (Second) of Agency provides:

> Apparent authority is the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, *arising from and in accordance with the other's manifestations to such third persons.*

RESTATEMENT (SECOND) OF AGENCY § 8 (1958) (emphasis added).

Both Oklahoma and Texas have cited that provision of the Restatement with approval. *Stephens v. Yamaha Motor Co.*, 627 P.2d 439, 441 (Okla.1981) (noting that "the elements that must be present before a third person can hold the principal liable for the acts of the agent on the theory of apparent authority are (a) *conduct of the principal,* (b) reliance *thereon* by the third person, and (c) change of position by the third person to his detriment" (quoting *Rosser–Moon Furniture Co. v. Oklahoma State Bank,* 135 P.2d 336 (Okla. 1943) (emphasis added)))[3]; *Ames v. Great Southern Bank,* 672 S.W.2d 447, 450 (Tex. 1984) ("Apparent authority in Texas is based on estoppel. It may arise either from a *principal knowingly permitting* an agent to hold herself out as having authority or by *a principal's actions* which lack such ordinary care as to clothe an agent with the indicia of authority, thus *leading a reasonably prudent person to believe that the agent has the authority* she purports to exercise." (emphasis added)). The Supreme Court of Virginia has cited a comment to section 8 of the Restatement with approval, *Equitable Variable Life Ins. Co. v. Wood,* 234 Va. 535, 362 S.E.2d 741, 744 (1987), but it has not adopted the blackletter provision.

This court has never expressly adopted the Restatement definition; we have however, defined apparent authority in similar terms:

> "Apparent authority arises when a principal places an agent 'in a position which causes a third person to *reasonably believe*

> *that the principal had consented* to the exercise of authority the agent purports to hold. This falls short of an overt, affirmative representation by a principal.'"

*Feltman v. Sarbov,* 366 A.2d 137, 139 (D.C. 1976) (quoting *Insurance Management v. Eno & Howard Plumbing Corp.,* 348 A.2d 310, 312 (D.C.1975) (quoting *Drazin v. Jack Pry, Inc.,* 154 A.2d 553, 554 (D.C.1959))) (emphasis added). For example, in *Jack Pry, Inc. v. Drazin,* 173 A.2d 222 (D.C.1961), relied upon by the majority, the facts that we found to be sufficient to establish apparent agency were all acts of the putative principal, not of the apparent agent.

Thus, courts have repeatedly said that the third party must reasonably rely upon the conduct of the putative principal and not the putative agent in concluding that the putative agent had authority to bind the principal. Over a hundred years ago, the Supreme Court of the District of Columbia, sitting in general term, said that "if the fraud consists in the agent's pretending to have the authority for that which he does, the principal is not affected." *Brooke v. Barnes,* 12 D.C. (1 Mackey) 5, 11 (1880).

In the present case, Stieger, the putative principal, gave his credit card, embossed with his name, to Garrett, the putative agent. In accordance with instructions he received from the merchants for which he authorized her to use his credit card, he provided written authorization for two particular uses, and no others. He did not permit Garrett to sign the card. Thus, the question is whether a merchant, having knowledge of the putative principal's actions, could reasonably conclude that the putative agent had *carte blanche* to make charges to the credit card.

Stieger took care to find out how to authorize Garrett to make limited use of his charge card and followed the instructions given to him. The majority focuses primarily on Stieger's action in turning over the card to Garrett as if, instead of having provided the card so that she could use it only for such limited purposes, he had given her a master key that, without more, can open all doors. In this respect, however, it is important to

---

**3.** It should be noted that *Stephens* involved an attempt to impose vicarious tort liability on the principal based on the apparent agency of the tortfeasor.

remember that a credit card is *not* a bearer instrument. Were it otherwise, the result might be different. *See Henry v. Auchincloss, Parker & Redpath,* 193 F.Supp. 413, 415 (D.D.C.1961) (holding that by conferring control over stock certificates on son, mother gave him apparent authority to dispose of the stock certificates, notwithstanding forgery of some endorsements), *aff'd,* 305 F.2d 753, 113 U.S.App.D.C. 84; RESTATEMENT (SECOND) OF AGENCY § 195A ("A special agent for an undisclosed principal has no power to bind his principal by contracts or conveyances which he is not authorized to make unless: ... the agent is given possession of goods or commercial documents with authority to deal with them.").[4]

As the majority recognizes, however, because a credit card is not a bearer device, a third party is not reasonable in treating it as such by failing to check the identity of the user against the identity of the cardholder by at least matching the signature of the bearer with the signature on the card. *Ante* at 485. This point was reinforced by the evidence adduced by Stieger regarding the industry practice of requiring written authorization of the cardholder for use by an agent.[5] The majority holds Stieger liable for those charges where Garrett signed Stieger's name, but not those for which she signed her own name. According to the majority, the

merchants reasonably relied on her signature for the former because it matched the signature on the back of the card. However, there is no dispute that Stieger did not permit Garrett to sign his card; her signing of the card was an act of forgery, compounded each of the thirteen times that she signed the charge slips as "P. Stieger". Under the common law, the principal's liability for acts within the apparent authority of an agent is based on the merchants' reasonable reliance on an action of the principal. That was not the case here, where the merchants relied on Garrett's forgeries. Thus, Garrett did not have apparent authority, within the meaning of 15 U.S.C. § 1643(a), to bind Stieger for the thirteen charges that she unlawfully signed "P. Stieger."

I believe that this result is consistent with the purpose of the rules of agency, which as Blackstone observed, is to further commerce. *See* 1 WILLIAM BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND *418 (1765) ("[W]ithout such a doctrine as this, no mutual intercourse between man and man could subsist with any tolerable convenience."). In the furtherance of commerce through the use of agents, there are two interests to be balanced. The rules should not make it too risky for a principal to employ agents. But the rules also should not make the dealings

---

4. In this respect, it is interesting to note that "apparent authority exists only with regard to those who believe and have reason to believe that there is authority; there can be no apparent authority created by an undisclosed principal." RESTATEMENT (SECOND) OF AGENCY § 8 cmt. a. In the instant case, it appears that with respect to the thirteen charges signed "P. Stieger," it is at least arguable that Garrett did not purport to act as an agent for Stieger, but instead acted on her own behalf. If so, then she could not have bound Stieger, for his existence remained undisclosed to the merchants. The point does not appear to have been argued, however.

5. At the hearing on his claim, Stieger testified regarding his experience with and investigation into the practices of merchants in accepting credit cards from persons other than the cardholder. The record does not reflect any objection to Stieger's testimony; in any event, Super.Ct.Sm.Cl.R. 12 provides that the trial shall be conducted "in such manner as to do substantial justice between the parties according to the rules of substantive law, and shall not be bound by the provisions or rules of practice, procedure, plead-

ing or evidence, except such provisions relating to privileged communications." The record contains no evidence rebutting Stieger's claims; indeed, if the Bank presented any evidence at all, it has not been made a part of the record before us.

Specifically, Stieger testified about his experiences with the car rental company and the hotel, which required written authorization when he called about what he should do to permit Garrett to use his card. He also testified that a hotel in California required written authorization from him before they would charge his father's room to his credit card. He testified that merchants have often required him to prove his identity in connection with his use of his own credit card. He testified that his own investigation of local merchants disclosed that several never honor credit cards presented by one other than the cardholder, and that of the remainder, all but one require a written authorization. The one exception is a drug store chain, which will accept a credit card presented by one other than the cardholder without written authorization only if it is used to pay for a drug prescription which matches the name of the cardholder.

of third persons with agents so uncertain of their validity that third persons will refuse to deal with agents. The law of agency balances those interests by charging the principal only with her own acts, while demanding only that third persons behave reasonably in relying upon those acts. After those rules have been exhausted, the law places the burden of fraudulent conduct outside the scope of actual agency upon the party defrauded, whether it is the principal or a third party. That is logical, because each member of society participating in commerce is charged with looking out for his or her own interests, and when those interests are wrongfully infringed, is given the right to proceed against at least the primary wrongdoer.

In my view, the majority's opinion upsets the balance of interests in the common law of agency by making the credit cardholder bear a disproportionate share of the risk from an activity furthering commerce that clearly benefits the card issuer and the merchants who accept the card. I disagree that the cardholder is in a better position to prevent fraud by a user with limited authority, such as Garrett perpetrated in this case. As the Truth-in-Lending Act makes clear, it is the duty of the card issuer to "provide[ ] a method whereby the user of such card can be identified as the person authorized to use it." 15 U.S.C. § 1643(a)(1)(F). Currently, it appears that most card issuers rely on a combination of embossed name and a signature provided by the cardholder. If those means of identification are too easily avoided or defeated by persons intent on fraud, it would seem that it is the card issuer that bears the burden of either improving the system or absorbing the loss.

## II.

Stieger argues that the Bank had the burden of proving that Garrett had authority to incur the entire hotel charge. The Bank denies that it had the burden, citing the "general rule" that the plaintiff bears the burden of proving his case. The Bank may be correct with respect to the general rule, but the more relevant specific rule is that the burden of proof regarding authority is on the one asserting authority, not the one denying

the authority, regardless of whether the one asserting it is the defendant. *See, e.g., Rustler's Steak House v. Environmental Assocs.*, 327 A.2d 536, 539 (D.C.1974) (allocating burden to defendant alleging authority); *Bayless v. Christie, Manson & Woods Int'l*, 2 F.3d 347, 352 (10th Cir.1993) (applying Oklahoma law to allocate burden to defendant alleging authority); *Abbott v. Earl Hayes Chevrolet Co.*, 384 S.W.2d 782, 784 (Tex.Civ.App.1964) (allocating burden to defendant alleging authority); *Raney v. Barnes Lumber Corp.*, 195 Va. 956, 81 S.E.2d 578, 584 (1954) (allocating burden to plaintiff alleging authority).

Garrett signed the disputed hotel charge in her own name. Thus, even under the majority's analysis, because the hotel would have been unreasonable in accepting the charge on Stieger's card, there was no apparent authority. Therefore, to prevail, the Bank had to produce some evidence of Garrett's actual authority. The only evidence of Garrett's actual authority was Stieger's testimony that he wrote a letter to the hotel authorizing her to charge up to $350; neither Stieger nor the Bank produced a copy of Stieger's letter to the hotel. The Bank sought to meet its burden of proving Garrett's authority to make charges at the hotel by using that part of Stieger's testimony that established he had authorized her to use his credit card at the hotel, but ignoring the part of Stieger's testimony that placed a $350 limitation on the authority to make charges over $350.00. In those circumstances, I disagree with the majority's holding that the Bank met its burden of proving Garrett's authority. A party may not meet its burden by taking but one portion of a statement of the opposing party, while ignoring the rest. That is little different from saying that had Stieger testified that he had *not* authorized Garrett, the trial court may credit the "authorized" part of the statement, but discredit the "not" and declare the Bank's burden met. Moreover, the record contains nothing to indicate that the commissioner discredited anything Stieger said. Therefore, on this point at the least, the case should be remanded.